Our next case for argument this morning is Lewis v. Sood. Mr. Mitchell. Is that Mr. Rayfield? From Tuesday. Welcome back. Thank you, Your Honors. May it please the Court. Luke Mitchell of Mayor Brown for the Plaintiff Appellant, Mr. Clarence Lewis. This case is not about whether Lewis is entitled to relief. The defendants now concede that at least one of his claims must go forward. It is solely about the extent of that relief, about whether Lewis will finally have the chance to litigate all of his claims. At the outset... Mr. Mitchell, are there any remaining claims in this case against anyone other than Paul? Yes, Your Honor. Because I looked at your brief, and the only substantive discussion in the brief seems to be the claim against Paul. Your Honor, there are claims against five defendants, including Paul, about four different conditions, about whether Lewis was adequately treated or continuously but ineffectively treated for this foul condition. That claim is against Defendant Bautista. There are also claims about whether Lewis was correctly treated, was treated for conditions that he actually did not have, about COPD and about diabetes. Those claims are against the remaining defendants. Of course, because Lewis was unable to develop the record, was unable to conduct discovery at the District Court, these claims are underdeveloped, and that's why the District Court should have appointed counsel. So, Mr. Mitchell, as you know, we've had a number of difficult cases involving prisoners and when counsel should be recruited and when they should not. There's no constitutional or other right to appointment of counsel. And perhaps following up on Judge Easterbrook's question, you know, when I look at the evidence that the defendants came forward with, which is they repeatedly looked at him, treated him, changed treatments from time to time, the medical records look pretty tough to overcome with respect to a standard of deliberate indifference. Is there any reason you can point us to doubt those medical records over the different years and the different conditions and the different doctors? Well, Your Honor raises an interesting question, and it's difficult for Lewis to contest a record that he was never able to adequately develop himself or rebut himself. I understand that, but I also know that at least when we get out of Chicago, free legal help is a limited resource. Absolutely. And this court and the other federal courts are always grateful for the kind of assistance that you and your colleagues have been providing in this and other cases, but work in the District Court can be really demanding. And what I'm struggling with here is how, well, we have said explicitly in recent cases that a district judge trying to exercise discretion about how to deal with these limited resources can basically take a seat-of-the-pants evaluation of the merits into account. Well, the District Court did conduct a merit review at the beginning of this case. Right, that's kind of an initial pleading review. We're familiar with that process from the Central District. Right. I guess another point that I would make as to, as this court has said many times, limited resources and many cases against which to apply them, is that there are many distinguishing characteristics that make this case unique. There are five characteristics as to Lewis, and there are five characteristics as to the complexity of his claim. As to Lewis, he was not just an incarcerated inmate, but one who was moved to a new facility two months after he filed the lawsuit, which this court has spoken about frequently in Egan, in James, in Penwell, as a factor of pushing towards the recruitment of counsel. Not only did he have the educational level of an early sixth grader, which Pruitt acknowledged. I really would like you to focus on what Judge Hamilton was asking. We've been very clear in recent months that the potential merit of the claim is something a district judge should and likely must consider before deciding to make a claim on counsel's limited time. So I'm wondering what the claims are, other than the claim against Paul, that meet that standard. I began by saying I didn't find a discussion of substance in your brief about why it would meet that standard, but this is your chance. Tell us what claims there are that meet that standard of probable merit. The greatest evidence, in fact the only evidence we have, comes from Lewis's own words, because Lewis conducted no discovery, and so we have what he wrote and what he said in his deposition. And what we know is that despite having a years-long bowel condition, Defendant Bautista prescribed him only with Imodium, and that perhaps slackened his syndromes a little. But why does that meet the standard of an Eighth Amendment claim? Because, as Judge Hamilton said, and the Supreme Court has said, and we have said en banc, even medical malpractice doesn't get you to first base. If you want a large medical malpractice, file a malpractice suit. You really have to show that they have closed their eyes and they're essentially not treating the defendant in a professional way. What gets us to first base on that constitutional theory? Absolutely, Your Honor. And it's because, as the district court recognized in its merit review, and as this court, in fact, said in Greeno, that continuing in a knowingly ineffective manner of treatment rises to the Eighth Amendment. If someone prescribes a level of treatment, knows it doesn't work, but continues with that treatment, then that is an Eighth Amendment claim. Why? If that's the best that can be done, you do what can be done. We all know that from personal experience, that there may be medical things for which there is no silver bullet to be had. But, Your Honor, I would respectfully say that that's a fact-based question about whether that is the best that can be done, and that requires expert testimony and it requires depositions of the defendant. And is he entitled? That's the question. What you're describing here is, frankly, one of the very toughest kinds of Eighth Amendment cases to prove, right? Because you're getting treatment. Here we have, for the bowel syndrome, he's being sent out for colonoscopies and all kinds of outside evaluations and exams, and apparently, I don't see any evidence that the doctors in prison were failing to comply with specialist recommendations. That's sometimes a viable theory. Well, I think, Your Honor, the first part of Your Honor's comment is actually the most important, that these are very difficult, very evidence-based claims to prove, to prove deliberate indifference claims. But you've got to show that this claim is the one that requires counsel, because otherwise what you're arguing is every Eighth Amendment medical treatment claim, the district judge must recruit counsel. Now, you've got a wall of precedent against that. Absolutely, Your Honor. And I'm not saying that every Eighth Amendment... So you have to distinguish this claim somehow... Right. ...rather than just saying it's an Eighth Amendment medical treatment claim. Correct. That is only one factor of the many factors that this court looks to when considering whether a case is too complicated for a pro se litigant to handle pro se. Here, not only was this a case in which Lewis had received some treatment, not a failure-to-treat claim, but he had four conditions with five defendants, five people who were treating him or not treating him, spanning years' worth of care. There were also other complicated legal issues required in this analysis, such as claim splitting and qualified immunity, things that Lewis could not be expected to handle by himself. And, of course, not only did the case pass the merits review, which, as this court in concurrence in Rovner, excuse me, Judge Rovner's concurrence in Pruitt pointed out, creates a significant funneling effect, depleting the number of cases that would require counsel, but it moved over to the discovery stage. And at this point, Lewis had absolutely no chance of conducting discovery himself. He told the district court that he was unable to reach outside people, unable to obtain records. And, of course, this was especially hard once he was moved to a different prison. At the same time, the district court, in its scheduling order, noted that Lewis, because he was pro se and because he was indigent,  These are all generic statements about every Eighth Amendment medical case. I've been trying to offer you the opportunity to explain why this case is different from your generic case, and you weren't taking it. You've got 36 seconds left. If there is a way to do it, please do it now. Well, I suppose I would like 30 seconds in rebuttal as well. But the difference with this case is that Lewis pleaded a claim that the district court recognized had merit, and then he was entitled, at that point in time, he was entitled to develop that claim. I just want to make it clear. The argument I take from you is the district judges must appoint counsel in all Eighth Amendment cases that pass the initial screening because you haven't distinguished this from any other Eighth Amendment case. Your Honor, I believe I've tried to distinguish it. I've pointed out that this was not a public treatment. Okay. Thank you very much. Thank you. Mr. Craig. May it please the Court. My name is Patrick Craig, representing Dr. Sood, N.P. Vollmer, Dr. Bautista, and Dr. Paul. The district court's order granting summary judgment to Dr. Sood, N.P. Vollmer, and Dr. Bautista should be affirmed. No reasonable jury could find these treaters were deliberately indifferent to any of Lewis's medical needs. They exercised reasonable medical judgment in assessing and treating Lewis's symptoms, and they provided prompt and appropriate care.  or they substantially departed from accepted professional judgment. Starting with Dr. Sood, it is clear from the medical records that Lewis's type 2 diabetes was correctly diagnosed and improved because of the diagnostic and treatment interventions that Dr. Sood implemented. Counsel, the argument, though, raises the dilemma that Judge Hamilton noted, which is how is a district court to decide, faced with these facts, whether or not the treatment would pass Eighth Amendment muster or not. So, for example, if a plaintiff had the resources of counsel, perhaps that they would have been able to hire a medical expert that can opine and say, look, Imodium or whatever Dr. Bautista gave, that's only effective for a month, and after that, no reasonable or sane physician would continue that treatment because to do the same thing without any success would be the definition of insanity. But a district court doesn't have the benefit of that, doesn't have the scientific or medical knowledge to make those determinations. So at the outset, when we're looking at prejudice, nor do we, frankly, and so at the outset, looking at prejudice, how do we do that? So the Pruitt analysis is a fact-based inquiry, and so for a symptom such as diarrhea, where the Imodium was, or the cough from the post-nasal drift, which comprised a lot of the care, the fact-based approach under Pruitt is a balancing approach of what are the medical issues, what are the capabilities of the plaintiff, and in this case, the analysis was focused on can Lewis, given his education level, given the medical records, can he display a competency to litigate this case? And throughout the six different motions to appoint counsel, which in and of themselves demonstrated an ability to litigate this case, the district court conducted the appropriate analysis in finding that in even responding, up until even the point of responding to the summary judgment motion, that he was citing to the medical records. He was citing to exhibits that the defendants were attaching to their pleadings. He was able to recall based off of his own personal knowledge of what medical care he underwent. He was able to cite treatments he underwent, what the diagnoses were, who were the individuals who were treating him. These showed how his competency under Pruitt balanced against the symptoms such as diarrhea and his post-nasal drip-induced cough. Under that analysis under Pruitt, the district court correctly determined that Lewis was capable of litigating this case. And given his response to the summary judgment motion, that showed how prudent the district court's analysis was because of all the traits he was able to display in that response, and citing to exhibits, citing to his personal knowledge. Did I hear you say, in essence, his motions for appointment of counsel showed that he didn't need counsel? His motions for appointment of counsel were part of the analysis for the district court. It sounds very close to the original Catch-22 from the novel, right? And if you're sane enough to ask to get out of the combat flying, then... Correct. But in addition to the motions to appoint counsel, he responded to five different sets of discovery requests. He was able to file motions to seek extension of time in order to comply with court order. In addition to the substance of his actual motions, where he's citing his own personal knowledge, he's citing to the medical records, he's citing to the affidavits of the defendant doctors which were attached. This was a competence in the district court's analysis which was reasonable and not an abuse of discretion. He showed that he was capable of litigating this case. Do you think... We know the case is going back with respect to one of the doctors. Do you think the district court could exercise her discretion to decline to appoint counsel at this point on that case? Well, with regards to Dr. Paul, I think the district court would be entitled to exercise this discretion. Once this case is remanded with respect to Dr. Paul, whatever claims are pending at that time, if Lewis moves for appointment of counsel, the district court will conduct the same prudent analysis it did in this case with respect to these three defendants and determine with whatever pending claims are, given Lewis's competency, given what he's shown so far, if he should be recruited counsel with respect to the claim on remand for Dr. Paul as well. With respect to some of the points made by Lewis's counsel, just to quickly go through them, he stated that Dr. Bautista, that all he did was prescribe Imodium. Certainly the medical records don't bear that out, that Dr. Bautista underwent much more interventions than that. And Judge Hamilton, you made the point that the medical records themselves are very strong and how was Lewis able to get past that. The fact of the matter is that the medical records are the best indication of what actually happened in Lewis's case. And under those medical records, no reasonable jury would find that these three treaters were amounting to criminal recklessness in their treatment of Lewis. And again, just Judge Easterbrook, to your point of this cannot be the standard that exhibiting a difficulty in obtaining certain documents leads to recruiting counsel in your case. If that were the standard that, can you show that having a counsel appointed would help you, well then it would be the case that in every pro se case that he would be recruited counsel. And essentially for the prejudice standard, was he prejudiced under the recruitment of counsel, the medical records show that he was not prejudiced. The presence of counsel could not have changed the strong medical records and the affidavits of the defendant doctors and MP Vollmer that show that their care was reasonable here. At most, the claims amount to a misdiagnosis of certain claims and the standards pretty clearly said that misdiagnosis does not amount to an Eighth Amendment violation. If there are no other questions, I will turn it over to counsel for Ms. Lindorf. Thank you, counsel. Ms. Yonig. May it please the court. Lee Yonig for defendant appellee, Lois Lindorf. I'd like to specifically discuss whether the prejudice issue with respect to Lindorf specifically, whether recruited counsel may have changed the outcome of the claim against her. Because Lois's main argument that recruited counsel may have made a difference to the outcome is really focused on this issue of medical complexity that more discovery might have developed the record more. But this issue of medical complexity isn't really relevant to the claim against Lindorf specifically. Because she was not a medical professional, she was entitled to defer to the medical judgment of his treatment providers unless doing so would have been unreasonable. And Lois agrees that this is the standard for the claim against her. There's no indication that her deference to his treatment providers was unreasonable. In fact, Lois's main complaint against her, which she discussed in his deposition, was that she didn't examine him during a specific incident in the infirmary when he was already in the infirmary, already being treated by medical professionals. So it made perfect sense for her not to intervene and insert herself into that kind of situation. And the record also reflects that when she was aware of his complaints, and it doesn't indicate that she was aware of all of them, that she then investigated them, she looked at his medical records, she conferred with his treatment providers, and she determined, well, he's being treated, and she doesn't have the medical knowledge to be able to overrule them and say, oh, no, I know that actually this treatment for COPD or diabetes or what have you should actually be X. That's not this court's standards for non-medical defendants in these types of cases. So the evidence in her – Lois's suggestion that more discovery might reveal something totally different with respect to Lindorf is just speculation because of this issue of a medical expert, medical records, wouldn't be relevant to the claim against her. And so regardless of the outcome of the claims against the other defendants, recruited counsel would not have made a difference to the claim against Lindorf. And unless the panel has any questions, we would ask the court to affirm the judgment in her favor. Thank you very much. Mr. Mitchell, the court appreciates your willingness and that of your law firm to accept the appointment in this case. You have been of assistance to the court as well as your client. The case is taken under advisement.